UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KEYSOFT, INC.,

        Plaintiff,

        v.

ZOHO CORPORATION,

        Defendant.

**C.A. No. 1:26-cv-01326**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Keysoft, Inc. ("Plaintiff" or "Keysoft"), by and through its undersigned counsel, file this Complaint for Patent Infringement against Zoho Corporation ("Defendant" or "Zoho") and alleges as follows:

## NATURE OF THE ACTION

1.    This action seeks legal and equitable relief based on Zoho's unlawful infringement of U.S. Patent No. 8,271,315 ("the '315 Patent" or "Patent-in-Suit"), which generally relates to Personal Information Utilization Systems and Personal Information Utilization Program for Commodity Based Identification to improve the quality of service for customers by sharing and utilizing personal information on customers amongst a variety of industries.

## PARTIES

2.    Plaintiff Keysoft is a Japanese corporation with a place of business at 116-1, Kouyama, Matsuda-Machi, Ashigarakami-Gun, Kanagawa, Japan 258-0002.

3.    Upon information and belief, Defendant Zoho is an Indian corporation located at Estancia IT Park, Plot Number 140 & 151, GST Road, Vallancheri Village, Chengalpattu

1

Taluk, Kanchipuram District, Chennai, Tamil Nadu 603202, India with U.S. headquarters located at 979 Springdale Rd., STE. 123, Austin, Texas.

## JURISDICTION AND VENUE

4. This is a civil action that arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 271 and 281. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

5. The Court has both general and specific personal jurisdiction over Zoho because U.S. Headquarters are located in Austin, Texas, upon information and belief, is registered to do business in the State of Texas, and continuously and systematically conducts business in the State of Texas and in this judicial district. In addition to the U.S. headquarters, Zoho upon information and belief, maintains locations in Texas, for example, and without limitation, in 255 Saengerhalle Rd, New Braunfels, Texas and 601 N Main St, McAllen, Texas. Exercising personal jurisdiction over Zoho in this patent infringement action comports with due process and traditional notions of fair play and substantial justice.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b), in that Zoho's U.S. headquarters are located here and upon information and belief, Zoho has committed acts of infringement in this judicial district. Zoho has also recently argued that jurisdiction and venue is proper in this judicial district, *Knossos Glob. Sys. LLC v. Zoho Corp. Priv. Ltd.*, Civ. No. 2:25-cv-00414-JRG-RSP, 2026 U.S. Dist. LEXIS 64011 (E.D. Tx. 2026) (denying Zoho motion to transfer from E.D. Texas to W.D. Texas as proper venue).

## BACKGROUND

### Mr. Yoshimitsu Kagiwada and the Patent-in-Suit

7. The named inventor of the patent-in-suit, the '315 patent, and a CEO of Keysoft, Mr. Yoshimitsu Kagiwada, graduated from Keio University, and has been an innovator in the field of big data marketing for over two decades.

8.    Mr. Kagiwada founded Keysoft in November of 1992 in response to his independent research and analysis revealing linkages between apparently unrelated events and purchases.

9.    At that time, Mr. Kagiwada was serving as a director of a bedding manufacturer and conducted independent research looking into when and why customers typically purchase bedding.  He found that (i) 30% of purchases occurred during marriage, (ii) 30% occurred during home construction, and (iii) 25% during relocation.  In fact, when Mr. Kagiwada compared the effectiveness of distributing bedding flyers to newly constructed homes versus other existing residences, the former showed significantly better results.

10.    Mr. Kagiwada, thus, discovered that by leveraging data related to events such as new home construction, relocation, and marriage, sales of bedding, furniture, and home appliances could be increased by targeted advertising based upon event and occurrences unrelated to bedding sales in the first instance.

11.    Based on this discovery, the patent application that matured into the '315 Patent was filed in May 2001 and was granted in the U.S. and Japan.

12.    Mr. Kagiwada, additionally, filed a patent application for crowdfunding in February 2001, and which was granted in Japan in 2011.

13.    Mr. Kagiwada is a named inventor of 3 issued U.S. patents, including those in the field of big data marketing as well as over 15 pending and/or published applications in the U.S.,[1] and holds approximately 30 other patents worldwide.

**Accused Method**

14.    Defendant Zoho develops, markets and provides customer relationship management (CRM) and marketing automation platforms, including Zoho CRM, which

---

[1]    Information regarding Mr. Kagiwada's U.S. patents and applications may be found at https://patents.justia.com/inventor/yoshimitsu-kagiwada (last accessed April 12, 2026).

enable businesses to store, process and utilize customer information in connection with the provision of goods and services. [2]

15.     According to publicly available information, Zoho CRM provides a centralized platform for storing customer data, including personal information, transaction histories, and behavioral data associated with customers. [3]

16.     Upon information and belief, Zoho CRM includes communication functionality that enables transmission of data and communications between user terminals and Zoho's servers, including delivery of marketing communications and campaign outputs.[4]

17.     Upon information and belief, Zoho CRM includes one or more processors configured to control operation of the system, including storage, analysis, and transmission of customer-related data.

18.     Zoho CRM stores personal information of a plurality of individuals associated with business customers, including information relating to prior transactions, interactions, and provision of products or services to such individuals.[5]

19.     Upon information and belief, Zoho CRM receives additional information relating to products, services, or campaigns defined by users through user terminals,

---

[2]     Information regarding Zoho Corporation was obtained from https://www.zohocorp.com (last accessed March 24, 2026).

[3]     https://www.zoho.com/crm/... describes management of "leads, contacts, and deals" in a centralized system (last accessed March 24, 2026).

[4]     See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html (describing automated campaign execution and customer engagement) (last accessed March 24, 2026).

[5]     See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html (describing use of behavioral data, purchase history, and engagement data) (last accessed March 24, 2026).

including information describing attributes of offerings and criteria for identifying target customers.[6]

20.    Zoho CRM analyzes such received information against stored customer information, including by segmenting customer data and identifying relationships or similarities between customer attributes, behaviors, and prior transactions. [7]

21.    Based on such analysis, Zoho CRM identifies specific individuals or groups of individuals associated with stored customer data whose attributes at least partially correspond to the received information.[8]

22.    Zoho CRM retrieves at least a portion of the stored personal information associated with such identified individuals for use in downstream processing, including campaign execution and customer targeting.

23.    Zoho CRM transmits communications, including marketing messages and related information, to user terminals or customer devices associated with the identified individuals based on the analyzed and retrieved customer information.[9]

24.    Upon information and belief, Zoho has offered and provided the foregoing functionality to customers throughout the United States and has derived substantial revenue therefrom.

**<u>Patent-In-Suit</u>**

---

[6]    See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html    (last accessed March 24, 2026) (describing campaign configuration and targeting inputs).

[7]    See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html (describing segmentation based on behavioral and demographic data) (last accessed March 24, 2026); and https://www.zoho.com/sites/default/files/crm/help/segmentation.pdf (describing grouping customers based on traits and purchase behavior) (last accessed March 24, 2026).

[8]    See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html (describing identification of target audiences and lead scoring based on behavior and engagement). (last accessed March 24, 2026).

[9]    See, e.g., https://www.zoho.com/crm/what-is-marketing-automation.html (describing automated delivery of targeted campaigns) (lased accessed March 24, 2026).

25.    On September 18, 2012, U.S. Patent No. 8,271,315 ("the '315 Patent"), entitled "Personal Information Utilization Systems And Personal Information Utilization Program For Commodity Based Identification," was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") to Mr. Yoshimitsu Kagiwada. A true and correct copy of the '315 Patent is attached hereto as Exhibit 1.

26.    The '315 Patent has been separately enforced in the U.S. District Court for the District of Delaware against Amazon (Civil No. 24-256-GBW) and Salesforce (Civil No. 24-257-GBW), and Keysoft settled the infringement claims under confidential terms.

27.    On March 19, 2025, the USPTO found a new Substantial New Question of Patentability ("SNQ") regarding, inter alia, the limitations of Claim 1.

28.    On September 8, 2025, Keysoft submitted a Patent Owner's Statement challenging the USPTO's finding of an SNQ.

29.    On December 15. 2025, the USPTO issued U.S. Reexamination Certification 8,271,315.

30.    Keysoft is the assignee of the '315 Patent and has all substantial rights to sue for infringement and collect damages for past infringement.

31.    The '315 Patent claims priority to PCT No. PCT/JP02/11502 filed on November 5, 2002, and the '315 Patent published as U.S Patent Application Publication U.S. 2006/0155646 on July 13, 2006.

32.    Claim 1 of the '315 Patent recites:

| 1. | A personal information utilization system comprising: |
|----|----|
|    | a personal information storage means; |
|    | a communication means; and |
|    | a processor configured for controlling operation of the personal information storage means and the communication means, said personal information |

6

|   | storage means storing personal information of a plurality of information disclosing persons and storing first commodity provision information pertaining to a first commodity provided to at least one of the plurality of information disclosing persons by a first commodity provider, and the processor further configured for: |
|---|---|
| a) | receiving second commodity provision information from a second commodity provider that is different than the first commodity provider, the second commodity provision information received from an information search side terminal via said communication means, the second commodity provision information including at least one of an attribute of the first commodity or information pertinent to providing the first commodity; |
| b) | checking said received second commodity provision information against the first commodity provision information; |
| c) | identifying, as a result of said checking, at least one specific information disclosing person from the plurality of information disclosing persons, the at least one specifically identified information disclosing person associated with said first commodity provision information, said identifying by using the second commodity provision information as a key such that the second commodity provision information at least partially coincides with the first commodity provision information; |
| d ) | reading out at least a portion of the personal information of said at least one specifically identified information disclosing person from said personal information storage means; and |
| e) | transmitting said read out at least a portion of the personal information to said information search side terminal via the communication means. |

7

33. Claim 1 of the Asserted Patent is directed to patent-eligible subject matter under 35 U.S.C. §101.

34. Claim 1 recites a computer-implemented personal information utilization system comprising a personal information storage means, a communication means, and a processor configured to control operation of those components.

35. The claimed system stores personal information of a plurality of information-disclosing persons together with commodity provision information associated with commodities provided by specific commodity providers.

36. The processor is further configured to receive second commodity provision information from a second commodity provider that is different from the first commodity provider, wherein the second commodity provision information is received from an information search side terminal via the communication means.

37. The claimed processor is configured to check the received second commodity provision information against stored first commodity provision information maintained in the personal information storage means.

38. As a result of this checking, the processor identifies at least one specific information-disclosing person associated with the stored first commodity provision information by using the second commodity provision information as a key that at least partially coincides with the stored first commodity provision information.

39. The processor then reads out at least a portion of the personal information of the specifically identified information-disclosing person from the personal information storage means.

40. The system transmits the read-out portion of the personal information to the information search side terminal via the communication means.

41. Claim 1 is not directed to an abstract idea, such as a fundamental economic

8

practice, a method of organizing human activity, or a mental process.

42.    Instead, Claim 1 is directed to a specific technological system and a defined sequence of computer-implemented operations that enable controlled identification, retrieval, and transmission of personal information based on commodity-related attributes received from an external terminal.

43.    The claimed operations, including automated checking of commodity provision information, key-based identification of specific individuals across stored datasets, selective read-out of personal information, and network transmission to an external terminal, cannot be performed by the human mind and are inherently computer-based.

44.    Claim 1 improves the functioning of personal information systems by enabling automated, attribute-based retrieval of personal information across multiple commodity providers without requiring manual searching, direct database access, or unrestricted disclosure of personal data.

45.    Accordingly, Claim 1 is directed to a concrete technological solution to a computer-centric data utilization problem, rather than an abstract idea.

46.    Even if Claim 1 were deemed to implicate an abstract idea, which it does not, the claim nevertheless recites an inventive concept sufficient to transform any alleged abstract idea into patent-eligible subject matter.

47.    Claim 1 does not merely implement a known practice on a generic computer but instead recites a non-conventional arrangement of system components and operations, including the use of commodity provision information as a key for identifying specific individuals and controlling access to personal information.

48.    The claimed system provides controlled, partial disclosure of personal information to external commodity providers without granting direct access to the underlying personal information storage, thereby improving security and data governance.

9

49.    The inventive concept of Claim 1 arises from the ordered combination of its elements, which collectively enable functionality not present in conventional personal information systems.

50.    Claim 1 therefore recites significantly more than the mere automation of an abstract idea.

51.    For at least these reasons, Claim 1 is directed to patent-eligible subject matter under 35 U.S.C. §101.

## COUNT I – PATENT INFRINGEMENT

52.    Plaintiff Keysoft incorporates by reference and realleges Paragraphs 1-51 of its Complaint and further incorporates by reference the Preliminary Infringement Claim Chart U.S. Patent 8,271,315; Claim 1 (attached as Exhibit 2), as though fully set forth herein.

53.    The allegations provided below are exemplary and without prejudice to Keysoft's infringement contentions. In providing these allegations, Keysoft does not convey or imply any particular claim constructions or the precise scope of the claims. Keysoft's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

54.    The '315 Patent is presumed valid pursuant to 35 U.S.C. § 282.

55.    Upon information and belief, all of the infringing activities (i) are controlled by Zoho or an entity within Zoho's control and located within the United States and (ii) occur within the United States.

56.    Zoho is not licensed or authorized to make, use, sell, offer to sell, or import any product or service that is covered by the claims of the '315 Patent.

57.    Upon information and belief, Zoho has directly infringed and will continue to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '315 Patent in violation of 35 U.S.C. § 271(a), including but not limited to Claim 1, every

time Zoho makes, uses, offers to sell, or sells Zoho CRM.  See, e.g., Preliminary Infringement Claim Chart U.S. Patent 8,271,315; Claim 1 (attached as Exhibit 2).

58.    Upon information and belief, Zoho is actively inducing individual and companies selling products on Zoho to directly infringe one or more claims of the '315 Patent and/or are contributing to others' infringement of one or more claims or the '315 Patent.

59.    Upon information and belief, Zoho's ongoing infringement of the '315 Patent is and will be willful, deliberate, and intentional.

60.    Zoho's infringing activities are damaging Plaintiff Keysoft in an amount to be determined at trial. Additionally, the willful and deliberate nature of Zoho's infringing activities entitles Plaintiff to recover trebled actual damages and to recover their attorneys' fees and costs incurred in this action.

## JURY DEMAND

61.    Plaintiff demands a trial by jury on all issues presented in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to enter judgment against Zoho, Zoho's subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with Zoho, and grant the following relief:

(A)    A finding that Zoho has directly and indirectly infringed one or more claims of the '315 Patent;

(B)    An award of damages adequate to compensate Plaintiff for Zoho's infringement of the '315 Patent under 35 U.S.C. § 284;

(C)    A determination that Zoho's infringement of the '315 Patent has been willful and deliberate;

(D) A determination that this Action is "exceptional" under 35 U.S.C. § 285, thereby entitling Keysoft to an award of its reasonable attorneys' fees and costs incurred in prosecuting this Action;

(E) An award of enhanced damages under 35 U.S.C. § 284 of treble damages based on the willful and deliberate nature of Zoho's infringement;

(F) An award of pre-judgment and post-judgment interest on all damages computed;

(G) An award of court costs and attorneys' fees as allowed by applicable law; and

(H) Such other relief as this Court deems fair, just, and appropriate.

Dated: May 18, 2026

Respectfully submitted,

By: *Michael C. Smith*
    Michael C. Smith
    Texas Bar No. 18650410
    michael.smith@solidcounsel.com
    Scheef & Stone, LLP
    113 E. Austin Street
    Marshall, TX 75670
    (903) 938-8900

    P. Branko Pejic (pro hac vice forthcoming)
    GREENBLUM & BERNSTEIN, P.L.C.
    1950 Roland Clarke Place
    Reston, Virginia 20191
    (703) 716-1191
    bpejic@gbpatent.com

    *Counsel for Plaintiff Keysoft, Inc.*